## ROBERT L. JUNGHANNS

### v.

## ENRIQUE RAMOS TULIER.

San Juan, Law, No. 607.

Process of garnishment, as a usual thing, holds not only money in the hands of the garnishee at the time of the service of the notice upon him, but all that comes to his hands up to the time he makes his return.

Opinion filed May 11, 1910.

*Mr. Frank Antonsanti,* attorney for the plaintiff.

*Messrs. J. Henri Brown* and *W. N. Landers,* assistant attorneys general, for the defendant.

RODEY, Judge, delivered the following opinion:

This cause by stipulation was tried before the court on November 9, 1909, without the intervention of a jury. Neither

Junghanns v. Tulier.

of the parties has filed briefs, although they were requested so to do. The stenographer has made a transcript of the evidence, and we have just examined the same, together with the exhibits. We will state the case as we understand it from the examination just made, and this statement involves inferences that we feel are fully justified from the exhibits and record.

The case is quite simple. Plaintiff was the owner of a judgment against one Eugenio Lorenzo Rodriguez, who was absent from Porto Rico, amounting to about $11,000. Plaintiff's attorney in this cause was the attorney in fact for Rodriguez in Porto Rico, and desired for his principal to pay all of plaintiff's judgment that he could. There was another judgment outstanding in one of the insular courts against said Rodriguez. One of Rodriguez's farms was to be sold for taxes. Plaintiff conceived that the best mode to collect some of his judgment and get a better title to the land was to buy it in for taxes, for which it was soon about to be sold, and then credit the surplus of the bid, as he would have to pay the taxes in cash, on the debt that was due him. Rodriguez's attorney in fact was agreeable to this. Plaintiff, on May 12, 1908, attended the tax sale and bought the property for $1,200, the amount of taxes due on it being only $120. So there was $1,080 surplus which plaintiff expected to credit on the debt which was due him. He did not have an assignment of the surplus to himself, and he didn't care, or could not, for some reason, get an execution against Rodriguez on that date, and so three days later, on the 15th, he put up a check for the surplus of $1,080 to keep the bargain fixed, which check he admits there was no money in the bank to pay, but he claims that the collector, who is the defendant, agreed that he would not cash the check for a few days. At the time or

immediately after the tax sale, the collector, knowing about the other judgment, and evidently intending to help the owner of it, notified the attorneys in the case at San Juan of the sale and of the intended payment of this money to him, and on the 16th of May proper process of garnishment from the district court at San Juan was served upon him. Then on the 22d of May, six days later, plaintiff appeared again at the collector's office with a proper assignment of the surplus to himself from the attorney in fact of Rodriguez, and immediately handed the same to the collector and made the deposit of the $1,080 in cash, which, of course, he immediately wanted back, or expected back through the treasury department, as he thought he was the owner of it under the assignment. The defendant did not tell him anything about the garnishment previously, and it is not certain from the record whether he told him about it on that day or not, but in due course thereafter, in the succeeding June, the money thus garnished was paid on the process of the insular court on account of the other judgment. It will thus be seen that the tax sale took place on May 12th, and the money became due and plaintiff became liable for it on that day, whether he had paid it or not. Therefore the garnishment of date the 16th caught the money, even though it was not then paid in. The evidence shows that the assignment from Rodriguez's attorney in fact to plaintiff of that surplus was made some time after the 15th. It is well known that a garnishment holds not only what is due, but what becomes due before the return of the garnishee. After the 22d of May, plaintiff had knowledge that his money was garnished, and could have fought the matter in the insular court, but did not, and, it is presumed, took his deed in regular course for the property he bought at the tax sale.

It does not concern the court that it is manifest the collector was a partisan of the owner of the other judgment, and was instrumental in inveigling plaintiff into paying the money to him after he had been garnished by the owner of the other judgment. The money was due from the moment of the tax sale on the bid, and it was due at the time of the garnishment, and the collector had not been served with any assignment of that surplus to plaintiff at the time the notice of garnishment was served upon him,—therefore clearly the owner of the other judgment had the best title to the money from the 16th on.

This is all there is in the case, and on these facts we unhesitatingly find for the defendant with costs, including the stenographer's fee of $15 for making the transcript. Therefore a judgment will be entered accordingly.